UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TROY MERNATTI,

        Plaintiff,

                                       Case No. 12-14580
vs.                                   HON. GERSHWIN A. DRAIN


NATIONSTAR MORTGAGE, LLC, *et al.*,

        Defendants.
_____/

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [#31] AND CANCELLING OCTOBER 9, 2013 HEARING

### I.      INTRODUCTION

Plaintiff, Troy Mernatti, filed a First Amended Complaint on November 19, 2012, which contained twenty-three[1] counts arising out of a foreclosure and subsequent sheriff's sale of his residential property. Presently before the Court is the Defendants, Nationstar Mortgage, LLC's ("Nationstar") and Federal National Mortgage Association's, Motion for Summary Judgment, filed on August 12, 2013. The matter has been fully briefed and the Court finds that oral argument will not aid in the resolution of this matter, therefore the October 9, 2013 hearing is cancelled and the motion will be resolved on the briefs submitted. *See* E.D. Mich. L.R. 7.1(f)(2). For the reasons

---

[1] The parties agreed and the Court entered a Stipulated Order dismissing Counts X, XIV, XV, XVII-XX, and XXIII on July 3, 2013. Thereafter, Plaintiff agreed to dismiss Count XXII as well.

-1-

that follow, the Court grants Defendants' Motion for Summary Judgment.

## II.    FACTUAL BACKGROUND

This matter involves real property located at 25905 Huron Street, Roseville, Michigan (the "Property"). On September 25, 2007, Mortgage 1 Incorporated loaned $123,000.00 to Plaintiff. Plaintiff's promise to pay was evidenced by a promissory note.  As security for the Note, Plaintiff granted Mortgage Electronic Registration Systems, Inc.("MERS") a mortgage on the Property (the "Mortgage").  On October 29, 2010, MERS assigned its interest to Nationstar.

Plaintiff defaulted on his obligations under the Note and Mortgage and in April of 2010, Nationstar sent Plaintiff a Loan Modification Agreement, which Plaintiff signed.  The Loan Modification Agreement states that "[b]orrower promises to make monthly payments . . . beginning on the 1st day of June, 2010 . . . ."  *See* Defs.' Mot., Ex.  E at ¶2.  On June 2, 2010, Plaintiff contacted Nationstar by telephone because he had not received a statement from Nationstar and he claims he did not know where to send his payment. *See* Plf.'s Resp., Ex.  A.  Plaintiff maintains that an unknown representative of Nationstar informed him that he should not make his June 1, 2010 payment because Nationstar could not take the payment since the loan modification had not been booked and an account had not been created.  Plaintiff did not make a payment for June 1, 2010 or July 1, 2010.

On July 3, 2010, Nationstar sent Plaintiff a letter stating that his loan was in default in the amount of $2,102.34.  *Id*., Ex.  E.  On July 6, 2010, Plaintiff responded to the default notice in writing informing Nationstar that its representative told him not to make the June 1, 2010 payment and that he had yet to receive any documentation from Nationstar confirming the implementation of the loan modification.  *Id.*, Ex.  F.  Nationstar responded on July 15, 2010 in relevant part:

Our records indicate that your loan received a Capitalization Modification which was

-2-

> booked, or posted effective, on June 28, 2010. It appears the department handling the modification did experience some booking delays, but have resolved the issues, and your account is due for June 1, 2010 in the amount of $804.87.
>
> Enclosed, you will find a copy of the loan modification agreement you signed, stating you agreed to the terms listed under the modification. Please refer to the highlighted portions of the loan modification agreement. This documentation states that effective June 1, 2010, your new modified monthly payment will be due. Please allow this document to serve as a statement defining the new terms and conditions of the modification agreement, with monthly payment and unpaid principle balance amounts clearly defined.

*Id.*, Ex. G. The next day, Nationstar sent correspondence indicating that Plaintiff was in default in the amount of $2,102.34 "which includes the sum of payments that have come due on and after the date of default 06/01/2010, any late charges, periodic adjustments to the payment amount (if applicable) and expenses of collection." *Id.*, Ex. H. The letter further advised that Nationstar must receive the full amount of the default by August 20, 2010 and that Plaintiff was still obligated to make his August 1, 2010 payment. *Id.*

On July 20, 2010, Plaintiff sent correspondence to Nationstar seeking clarification, and when he did not receive a response, sent a follow up letter on August 7, 2010 disputing his obligation to pay late charges or penalties due to Nationstar's actions. In August of 2010, Plaintiff made a full payment, plus half of another payment. On August 16, 2010, Nationstar sent Plaintiff correspondence indicating that he was still in default in the amount of $1,708.86, "which includes the sum of payments that have come due on and after the date of default 07/01/2010 . . . ." *Id.*, Ex. K. On September 17, 2010, Nationstar sent another default notice for the same amount. *Id.*, Ex. L. Plaintiff claims to have made monthly payments in the amount of $905.00 for the months of September, October, November and December of 2010.

On January 18, 2011, Nationstar sent another default notice advising Plaintiff that his loan was in default as of November 1, 2010 in the amount of $3,364.53, "which includes the sum of

payments that have come due . . . any late charges . . . and expenses of collection." *Id.*, Ex. N. Plaintiff maintains that he made his monthly payments from January of 2011 through February of 2012.

After responding to several of Plaintiff's letters, Nationstar sent Plaintiff a new loan modification agreement proposal on June 29, 2011. *See* Defs.' Mot., Ex. F. Plaintiff refused to execute the agreement despite the fact that his new monthly payment obligations were lower than those set forth in the 2010 Loan Modification Agreement. *Id.*; *see also* Ex. D at 52.

In March of 2012, Nationstar began refusing to accept Plaintiff's monthly payments. A March 9, 2012 follow up letter from Nationstar to Plaintiff's February 8, 2012 correspondence states in relevant part:

> Your loan and related documents have been reviewed and show that you signed to an agreement knowing that your June 2010 payment would still be due. According to our records you did not make a payment until August which would have caused you to be delinquent even if the modification was booked on July 1, 2010. We did not receive a payment in October 2010 or January 2011 which made the account 3 payments delinquent. Please note that once a loan reaches a certain delinquency, individual payments will be returned until the full delinquent amount is paid. As such, the debt, in the form of a mortgage loan, may be due accordingly and your loan account will continue to be serviced appropriate to its status.

*See* Defs.' Mot., Ex. P. Due to Plaintiff's continued default, Nationstar commenced foreclosure proceedings which culminated with a sheriff's sale of the property.

On March 19, 2012, the first notice of a foreclosure sale of the Property was published in the Macomb County Legal News pursuant to MICH. COMP. LAWS § 600.3208. *Id.*, Ex.G. The notice indicated that the sheriff's sale would take place on April 19, 2012. *Id.* The same notice ran on March 26, 2012, April 2, 2012 and April 9, 2012. *Id.* The same notice was also "duly posted in a conspicuous place upon the premises described in said mortgage. . . ." *Id.* The sheriff's sale is evidenced by a sheriff's deed dated April 19, 2012. Accordingly, the redemption period expired on

October 19, 2012.

On July 3, 2012, Plaintiff sent a qualified written request to Nationstar indicating his belief that there had been an error in the servicing of his loan. Nationstar substantively responded on August 27, 2012 by enclosing copies of its six previous letters sent to Plaintiff; letters which addressed the same issues raised in Plaintiff's July 3, 2012 correspondence. Plaintiff sent another qualified written request to Nationstar on October 15, 2012. On November 20, 2012, Nationstar responded by noting that it had reviewed Plaintiff's loan file, and found that all payments had been properly applied and that the payment history was accurate. Also included with Nationstar's November letter were copies of its previous letters sent to Plaintiff, as well as a copy of his payment history.

Plaintiff filed a First Amended Complaint in November of 2012 and later stipulated to the dismissal of certain claims. Therefore, the only remaining claims in this action are: Count I, violation of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 *et seq.*; Count II, Breach of Implied Covenant of Good Faith and Fair Dealing; Count III, Defamation of Title; Count IV, Discharge of Lien and Claim to Quiet Title; Count V, Violation of MICH. COMP. LAWS §600.3205a; Count VI, Intentional Infliction of Emotional Distress; Count VII, Request for Equitable, Declaratory & Injunctive Relief; Count VIII, Fraudulent Misrepresentation; Count IX, Quiet Title; Count XI, Silent Fraud and Bad Faith Promises; Count XII, Breach of Contract/Wrongful Foreclosure, Count XIII, Violation of Michigan Foreclosure Law and Count XVI, violation of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681s-2(b).

## III.     LAW & ANALYSIS

### A.     Standard of Review

Federal Rule of Civil Procedure 56(a) empowers the court to render summary judgment "if the

pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See Redding v. St. Eward*, 241 F.3d 530, 532 (6th Cir. 2001). The Supreme Court has affirmed the court's use of summary judgment as an integral part of the fair and efficient administration of justice. The procedure is not a disfavored procedural shortcut. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *see also Cox v. Kentucky Dept. of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995).

The standard for determining whether summary judgment is appropriate is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Amway Distribs. Benefits Ass'n v. Northfield Ins. Co.,* 323 F.3d 386, 390 (6th Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986); *Redding*, 241 F.3d at 532 (6th Cir. 2001). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986) (emphasis in original); *see also National Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001).

If the movant establishes by use of the material specified in Rule 56(c) that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law, the opposing party must come forward with "specific facts showing that there is a genuine issue for trial." *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 270 (1968); *see also McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). Mere allegations or denials in the non-movant's pleadings will

not meet this burden, nor will a mere scintilla of evidence supporting the non-moving party. *Anderson*, 477 U.S. at 248, 252. Rather, there must be evidence on which a jury could reasonably find for the non-movant. *McLean*, 224 F.3d at 800 (citing *Anderson*, 477 U.S. at 252).

**B.     Defendants' Motion for Summary Judgment**

**1.     Counts II, III, IV, V, VI, VII, VIII, IX, XI, XII and XIII**

Defendants maintain that all of Plaintiff's claims challenging the foreclosure sale are subject to dismissal because these claims are based on a purported breach of an oral modification agreement, therefore these claims are barred by the statute of frauds. Defendants also argue that Plaintiff's failure to redeem the property within the redemption period precludes Plaintiff from raising any claims associated with the foreclosure.

Michigan law requires that certain types of agreements be reduced to a writing. *See Crown Technology Park v. D&N Bank, F.S.B.*, 242 Mich. App. 538, 548; 619 N.W. 2d 66 (2000); *see also*, MICH. COMP. LAWS § 566.132(2). Michigan Compiled Laws § 566.132(2) states:

> An action shall not be brought against a financial institution to enforce any of the following promises or commitments of the financial institution unless the promise or commitment is in writing and signed with an authorized signature by the financial institution:
> (a)     A promise to lend money, grant or extend credit, or make any other financial accommodation.
> (b)     A promise or commitment to renew, extend, modify, or permit, a delay in repayment or performance of a loan, extension of credit, or other financial accommodations.
> (c)     A promise or commitment to waive a provision of a loan, extension of credit, or other financial accommodation.

MICH. COMP. LAWS § 566.132(2). Here, the Loan Modification Agreement expressly stated that Plaintiff's first payment was due on June 1, 2010. While Plaintiff maintains that a Nationstar representative told him not to make his June 1, 2010 payment, the express terms of the Loan Modification Agreement are binding. Under Michigan law, any promise to permit a delay in

-7-

performance under the agreement must have been reduced to a writing and signed by an authorized representative of Nationstar. *Id.*; *see also Dingman v. OneWest Bank, FSB,* 859 F. Supp. 2d 912 (E.D. Mich. 2012); *Barter v. U.S. Bank, N.A.*, No. 10-11476, 2011 U.S. Dist. LEXIS 3780, *10-12 (E.D. Mich. Jan. 13, 2011); *Jarbo v. BAC Home Loan Servicing*, No. 10-12632, 2010 U.S. Dist. LEXIS 132570, * (E.D. Mich. Dec. 15, 2010) (concluding the statute of frauds "precludes Plaintiffs from bringing claims alleging the breach of an unwritten promise to modify or delay repayment of their mortgage loans.")

In response, Plaintiff argues that Defendant cannot rely on the statute of frauds because of legal impossibility. Plaintiff argues that it was impossible for him to perform under the Loan Modification Agreement because he could not make his June 1, 2010 payment because Nationstar did not create his account until June 28, 2010. While it is true that "[a] promisor's liability may be extinguished in the event his or her contractual promise becomes objectively impossible to perform[,]" Plaintiff provides no evidence suggesting that his performance by way of a June 1, 2010 payment was objectively impossible. *Roberts v. Farmers Ins. Exch.*, 275 Mich. App. 58, 73-74; 737 N.W. 2d 232 (2007). Plaintiff did not attempt to make his June 1, 2010 payment, thus there is no evidence that Nationstar would not have accepted his payment if he had attempted to send it in June of 2010. Therefore, Counts II, III, IV, V, VI, VII, VIII, IX, XI, XII and XIII, which all stem from the Defendants purported breach of an oral promise to Plaintiff that he should delay his performance, as well as attack the foreclosure and subsequent sheriff's sale, are subject to dismissal based on the statute of frauds.

However, even if the statute of frauds did not bar Counts II, III, IV, V, VI, VII, VIII, IX, XI, XII and XIII, Plaintiff has failed to allege facts sufficient to challenge the foreclosure sale after the expiration of the statutory redemption period. Once the redemption period following a foreclosure

of a parcel of real property has expired, the former owner's rights in and title to the property are extinguished. *See Overton v. Mortgage Electronic Registration Systems*, No. 07-725429, 2009 WL 1507342, *1 (Mich. App. May 28, 2009); *Mitan v. Fed. Home Loan Mortg. Corp*., 703 F.3d 949, 951 (6th Cir. 2012). ). "[T]he filing of a lawsuit is 'insufficient to toll the redemption period,' Plaintiff must make a clear showing of fraud or irregularity to maintain this action." *Conlin v. Mortgage Elec. Registration Sys.,* 714 F.3d 355, 360 (6th Cir. 2013) (quoting *Overton*, 2009 Mich. App. LEXIS 1209, at *1).

"The law in Michigan does not allow an equitable extension of the period to redeem from a statutory foreclosure sale in connection with a mortgage foreclosed by advertisement and posting of notice in the absence of a *clear showing of fraud, or irregularity*." *Overton*, 2009 WL 1507342, at *1(emphasis added)(citing *Schulthies v. Barron*, 16 Mich.App 246, 247-248; 167 NW2d 784 (1969)). In *Conlin*, the Sixth Circuit Court of Appeals confirmed that a court's power to set aside a foreclosure sale after the expiration of the statutory redemption period is "drastically circumscribed." *Conlin*, 714 F.3d at 359. In order for a foreclosure to be set aside post-redemption, Plaintiff must make a clear showing of fraud or irregularity in the foreclosure procedure itself. *Id.* at 359-60 ("[A] plaintiff-mortgagor must meet this 'high standard' in order to have a foreclosure set aside after the lapse of the statutory redemption period.")

Here, all of Plaintiff's rights in the property were extinguished when the redemption period expired on October 19, 2012, and he has failed to demonstrate fraud or irregularity during the foreclosure process sufficient to set aside the foreclosure sale. In order for Plaintiff to meet the high standard for setting aside the foreclosure sale, Plaintiff must show prejudice. Plaintiff can show prejudice by demonstrating that he "would have been in a better position to preserve [his] interest in the property absent defendant's noncompliance with the statute." *Kim v. JP Morgan Chase*, 493

Mich. 98, 115; 825 N.W.2d 329 (2012). Here, Plaintiff has failed to identify fraud or irregularity during the foreclosure process. The notices published in the Macomb County Legal News explained Plaintiff's right to redeem the property under Michigan law and that such right expired within six months of the date of the sale, or on October 19, 2012. Plaintiff does not allege any procedural issues with the foreclosure process itself, therefore he lost all right, title and interest in the Property upon the expiration of the redemption period.

In any event, Plaintiff's claims are subject to dismissal for additional reasons. Plaintiff's claim that Defendants violated MICH. COMP. LAWS § 600.3205a does not provide an independent cause of action for setting aside a foreclosure. *See Tipton v. Flagstar, FSB*, No. 305911, 2012 WL 4800169, at *2 (Mich. Ct. App. Oct. 9, 2012) ("Plaintiffs' reliance on MCL 600.3205c, in and of itself, is unavailing. The statute provides a mechanism by which a borrower may demand that a foreclosure proceed under the supervision of the court, but the statute does not in and of itself create an independent cause of action to nullify a foreclosure sale after the expiration of the redemption period and entry of a judgment of possession.... [p]laintiffs did not seek this relief from a court during the redemption period . . . .").

Therefore, even if Defendant violated MICH. COMP. LAWS § 600.3205, the remedy Plaintiff seeks, setting aside the foreclosure sale, is unavailable. If the mortgage holder violates MICH. COMP. LAWS § 600.3205, a mortgagor may file an action to convert a foreclosure by advertisement into a judicial foreclosure. *See Stein v. U.S. Bancorp*, No. 10-14026, 2011 U.S. Dist. LEXIS 18357, *29 (E.D. Mich. Feb. 24, 2011). In *Stein*, the court noted that even if the plaintiff could establish that the defendant violated Michigan's foreclosure by advertisement statute, the plaintiff had to seek relief prior to consummation of the foreclosure process. *Id.* "The provision allows certain borrowers to determine the *type* of foreclosure proceeding, not to avoid foreclosure altogether or set

-10-

aside an already-completed foreclosure." *Id*. (emphasis in original).

As to Plaintiff's claim that Defendants breached the covenant of good faith and fair dealing, Michigan "does not recognize a cause of action for breach of the implied covenant of good faith and fair dealing." *Fodale v. Waste Management of Michigan, Inc.*, 271 Mich. App. 11, 35; 718 N.W.2d 827 (2006). Plaintiff fails to provide any response to Defendant's argument that Michigan does not recognize an independent claim for breach of the covenant of good faith and fair dealing. This claim is subject to dismissal for this additional reason.

The Court also concludes that Plaintiff's claims for intentional infliction of emotional distress and fraud fail as a matter of law. Any duty owed to Plaintiff arose solely out of the parties' contractual relationship, and Michigan law precludes tort actions where a contractual agreement exists. *See Sherman v. Sea Ray Boats, Inc*., 251 Mich. App. 41, 52; 649 N.W.2d 783 (2002). "Michigan case law expressly provides that an action in tort may not be maintained where a contractual agreement exists, unless a duty, separate and distinct from the contractual obligation, is established." *Id*. Plaintiff fails to address Defendants' argument in his Response in Opposition. Any duties that Defendants owed to Plaintiff arose out of the Mortgage and subsequent Loan Modification Agreement and not from a duty that is separate and distinct from these contractual agreements. Therefore, these claims are properly dismissed even if the statute of frauds and the expiration of the redemption period did not bar these claims.

## 2.   RESPA (Count I)

Defendants raise three challenges to Plaintiff's RESPA claim. Specifically, Defendants argue that Plaintiff's correspondence to Nationstar does not constitute a qualified written request under the RESPA. Defendants also maintain that even if his correspondence qualifies as a qualified written request, Nationstar's responses comply with the RESPA. Lastly, Defendants argue that

Plaintiff fails to allege any damages stemming from Nationstar's deficient responses.

A qualified written request is defined as:

[W]ritten correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that –

(i)     includes, or otherwise enables the servicer to identify, the name and account of the borrower; and

(ii)    includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

12 U.S.C. § 2605(e)(1)(B).  RESPA requires a servicer to acknowledge a qualified written request within five days after its receipt.  Additionally, the servicer has thirty days[2] to substantively respond by (1) correcting the account, or (2) explaining why the account is correct and providing contact information for further assistance; or (3) providing a written response with the information requested or an explanation for why the information is unavailable or cannot be obtained and providing contact information for further assistance.  12 U.S.C. § 2605(e)(2)(A)-(C).

The Court concludes that Plaintiff's RESPA claim fails because Plaintiff cannot demonstrate any damages stemming from Nationstar's alleged faulty and/or untimely responses.[3]  *See Bajwa v. John Adams Mortg. Co.*, No. 11-cv-12183, 2011 WL 6009266, *5 (E.D. Mich. Nov. 30, 2011) ("Courts have held that a borrower cannot sustain actual damages based on a mortgagee's failure to respond to a qualified written request where the mortgage was already foreclosed approximately

---

[2]   Both parties rely on an old version of § 2605(e)(1), which was amended in 2010 and became effective on July 21, 2011.  The old version required servicers to acknowledge qualified written requests within twenty days and substantively respond within sixty days.

[3]   Because the Court concludes that Plaintiff's RESPA claim is subject to dismissal based on his failure to demonstrate damages arising from a RESPA violation, the Court need not resolve Defendants' alternate arguments that Plaintiff's correspondence does not constitute qualified written requests and even if it did, Nationstar's responses complied with the RESPA.

-12-

three weeks before the time to respond expired."); *see also Byrd v. Homecomings Fin. Network*, 407 F. Supp. 2d 937, 944-46 (N.D. Ill. 2005); *Battah v. ResMAE Mortg. Corp*., 746 F. Supp. 2d 869, 2010 WL 4260530, *6 (E.D. Mich. Oct. 28, 2010); *Collier v. Wells Fargo Home Mortg*., No. 04-086, 2006 WL 1464170, *3 (N.D. Tex. May 26, 2006) (finding that the plaintiffs had failed to allege damages relating specifically to the time period after plaintiffs sent their qualified written requests, as distinct from damages flowing from the alleged improper servicing of their mortgage which had already occurred.)

Plaintiff has failed to bring forth any evidence showing a genuine issue exists as to the damages he suffered as a result of Nationstar's purported violation of the RESPA. Plaintiff could not have suffered damages stemming from Nationstar's responses to his qualified written requests, rather the sole basis for Plaintiff's damages is his contention that Nationstar improperly serviced his loan, which occurred prior to his qualified written requests in July and October of 2012. Therefore, Defendants are likewise entitled to judgment in their favor on Plaintiff's RESPA claim.

### 3.     FCRA (Count XVI)

In the Complaint, Plaintiff alleges that Nationstar was required "to respond to the request for reinvestigation initiated by Plaintiff through one or more credit reporting agencies . . . [and] to cease reporting the derogatory information during the pendency of the period of 60 days following the receipt of the qualified written request." *See* Compl., ¶¶ 232-33. Further, Plaintiff maintains that Nationstar "continued to report the adverse credit information." *Id*. at ¶ 234. Defendants argue that Plaintiff's FCRA claim is insufficiently pled and has no basis in fact. Plaintiff fails to address Defendants' arguments concerning his FCRA claim in his Response in Opposition. The Court concludes that Plaintiff's FCRA claim is subject to dismissal.

There is no private right to bring a cause of action based on non-willful violations of 15

U.S.C. § 1681s-2(a), which outlines a duty to provide accurate information to credit reporting agencies. *See Bach v. First Union Nat'l Bank*, 149 F. App'x 354, 358-59 (6th Cir. Aug. 22, 2005) ("While a consumer cannot bring a private cause of action for a violation of a furnisher's duty to report truthful information, a consumer may recover damages for a willful violation of 15 U.S.C. § 1681s-2(b)(1)(A)-(D)."); *Yaldu v. Bank of Am. Corp.*, 700 F. Supp. 2d 832, 842 (E.D. Mich. 2010); *Bryant v. BAC Home Loans Servicing*, No. 10-12677, 2011 U.S. Dist. LEXIS 115845, *9-10 (E.D. Mich. Oct. 6, 2011). Once a furnisher receives notice from a credit reporting agency that a consumer disputes the information provided by the furnisher, the furnisher "is required to (1) investigate the veracity of the disputed information; (2) review the information provided by the credit reporting agency; (3) report the results of the investigation; and (4) correct any inaccuracies uncovered by the investigation." *Bach*, 149 F. App'x at 358. Where a consumer brings a cause of action for a willful violation, the consumer must file a complaint with a consumer reporting agency, which notifies the servicer of the consumer's complaint. *See Yaldu*, 700 F.Supp. 2d at 843; *Kovacs v. JPMorgan Chase & Co., Inc.*, No. 09-10862, 2010 U.S. Dist. LEXIS 4138, *3 (E.D. Mich. Jan. 20, 2010).

Plaintiff has failed to present any argument or evidence in support of his FCRA claim. There is no evidence concerning which consumer credit reporting agencies Plaintiff contacted to complain about Nationstar's purported furnishment of untruthful credit information, nor that Nationstar failed to conduct an investigation or that Nationstar actually provided inaccurate information to these unidentified credit reporting agencies. Plaintiff has simply failed in his burden to demonstrate a question of fact exists as to this claim, therefore Defendants are likewise entitled to judgment in their favor on Plaintiff's FCRA claim.

### 4. Amendment

Lastly, Plaintiff argues that he should be given an opportunity to amend his claims should the Court conclude that his claims are insufficiently pled. Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend complaints shall be freely granted "when justice so requires." *Foman v. Davis*, 371 U.S. 178, 181 (1962); *Troxel Mfg. Co. v. Schwinn Bicycle Co.*, 489 F.2d 968, 970 (6th Cir.1973). However, leave is inappropriate when there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, [or] undue prejudice to the opposing party by virtue of the allowance of amendment." *Foman*, 371 U.S. at 182; Troxel, 489 F.2d at 970. The determination of whether to grant a motion to amend is left to the sound discretion of the trial court. *Foman*, 371 U.S. at 182; *Estes v. Kentucky Utilities Co.*, 636 F.2d 1131, 1133 (6th Cir.1980).

Here, the Court declines to permit Plaintiff an opportunity to file a Second Amended Complaint. Plaintiff provides no argument explaining how an amendment will rectify the deficiencies in his pleadings. Further, Defendants will be severely prejudiced if the Court were to allow an amendment at this stage of the proceedings. Discovery will have to be reopened, which will cause undue delay. This matter is nearly a year old and Plaintiff has had ample time to present his case and obtain discovery in support of his claims. Accordingly, the Court denies Plaintiff's request to file a Second Amended Complaint.

## IV.   CONCLUSION

For the reasons set forth above, Defendants' Motion for Summary Judgment [#31] is GRANTED. This cause of action is dismissed.

SO ORDERED.

Dated: October 10, 2013

/s/Gershwin A Drain
Gershwin A. Drain
UNITED STATES DISTRICT JUDGE


CERTIFICATE OF SERVICE


A copy of this Order was served upon attorneys of record by ordinary
mail or electronic mail.

s/ T. Bankston
Deputy Clerk